## MISNER *v.* STANGE.

1. APPEAL AND ERROR — IRREGULARITY — MOTION TO DISMISS — WAIVER.

   In the absence of a motion to dismiss an appeal in the Supreme Court on the ground of irregularity, the question will be regarded as having been waived.

2. LIENS—NOTICE TO PURCHASER—AGREEMENT TO PAY.

   *Held,* that the purchaser of a farm knew of certain liens and agreed to assume and pay them as part of the purchase price.

3. SAME—CONCURRENT LIENS—ATTORNEY'S FEES.

   Where plaintiff in divorce proceedings was granted a decree including alimony and attorney's fees, which were made a lien upon defendant's farm, already incumbered by a mortgage, the lien of defendant's attorney for his fees, *held,* not concurrent with the lien of plaintiff's attorney, since, if the farm should sell for only enough to pay the mortgage and the alimony, the effect would be to compel plaintiff to pay a portion of defendant's attorney fees.

Cross-appeals from Ottawa; Cross, J. Submitted January 18, 1918. (Docket No. 145.) Decided December 27, 1918.

Bill by Charles E. Misner against Claus H. Stange, Walter I. Lillie, and Anna Wegner for the foreclosure of certain liens. Defendants Lillie and Wegner filed separate cross-bills asking affirmative relief. From the decree rendered, defendants Lillie and Wegner appeal. Modified, and affirmed.

*Charles E. Misner, in pro. per.*

*Leo C. Lillie,* for defendant Lillie.

*Soule & Soule,* for defendant Wegner.

BIRD, J. This controversy with its variety of angles is the outgrowth of a desire upon the part of Claus

H. Stange to take unto himself many wives and to their persistency in employing counsel to fight for their freedom and alimony.

In the year 1909 Mr. Stange was the owner of an 80-acre farm in Ottawa county, upon which he resided with his wife. In October of that year he placed an incumbrance thereon of $500 running to the Grand Haven State Bank. Some time after the execution of the mortgage Mrs. Stange died, and later Stange married Albina Roetter. She lived with him only a few months when she filed a bill for divorce on the ground of extreme cruelty, and at the same time commenced a suit in replevin to recover her household goods. In these cases the plaintiff was represented by Walter I. Lillie and the defendant by Charles E. Misner. The divorce proceedings resulted in May, 1913, in a decree for plaintiff and an allowance of alimony and costs amounting to $518.81. This sum was made a lien on the north half of said 80 acres which included the homestead, subject to the bank mortgage.

Stange failed to pay the alimony as directed and Mr. Lillie began proceedings to foreclose the lien. In this suit Stange was made a party defendant and was represented by Mr. Misner. Pending these proceedings Misner purchased the decree for alimony from Mrs. Stange and took an assignment thereof to himself. When this came to the attention of Mr. Lillie he insisted the suit should not abate on account of the assignment to Misner but should proceed for the purpose of enforcing his lien for attorney fees and disbursements which were included in the decree. The court held that the assignment, as against Lillie, was void, and that Lillie might proceed to foreclose the lien to the extent of his attorney fees and disbursements which were included therein, and authorized a sale to be made of the premises, by a circuit court commissioner, at any time after September 1, 1914.

In pursuance of this order notice was given of the sale. A few days prior to the sale Misner filed a motion to amend the decree of sale and secured an order from the court adjourning the sale. Some misunderstanding arose over the service of the order of adjournment and the sale proceeded and the premises were bid off by Leo Lillie for the amount of the lien plus the costs and expenses of sale, amounting to $213.96. Subsequently Misner's motion was heard and the decree in the foreclosure case was amended giving Misner the right to foreclose the lien for alimony to the extent of $260, the amount which he had paid for the assignment. Mr. Leo Lillie then, on behalf of Mr. Stange, tendered to Mr. Misner the sum of $274.09, which was supposed to cover what Misner paid for the decree, together with the interest thereon. Mr. Misner refused to accept this, claiming it was insufficient. Following this Mr. Leo Lillie, representing Mr. Stange, filed a bill in chancery to compel a cancellation of the decree for alimony and a discharge of the lien, and also claimed the statutory penalty of $100 for Misner's refusal to discharge the lien when tendered the amount due thereon. Misner answered the bill and claimed the benefit of a crossbill. This suit resulted in giving Misner a lien of $260, the amount which he had paid for the alimony and an additional sum of $238.10 for professional services growing out of the divorce proceeding, and both were made a lien upon the 80 acres.

Before the complications attending Stange's second marriage and divorce had been ironed out he married again, this time Marie DeRege. He soon quarreled with her and she employed Misner to file a bill for divorce. This was subsequently granted and she was awarded $150 alimony and the same was made a lien upon the 80 acres in question. This decree was subsequently assigned to her counsel, Misner, and later

he assigned it to Walter I. Lillie. About this time a levy was made upon the 80 acres to enforce the collection of a judgment for $264.75 and interest, which had been rendered against Stange and in favor of one Lexow some time in 1911.

Stange, having gotten rid of wife number three, advertised in a Chicago newspaper for a housekeeper. This was answered by Anna Wegner, who came onto the scene and soon thereafter arrangements were made by which she and Stange were to be married. This was prevented, however, by the order of the court in the decree of divorce granted to Marie DeRege Stange, prohibiting the re-marriage of Stange within a year from the date of the decree. Before the year was up Anna Wegner concluded that she would not marry Stange but did conclude to buy his farm. She was possessed of some means and during the time she kept Stange's house she advanced money to the extent of $1,200, as she claims, to take care of certain indebtedness of Stange's. In consideration of this and of her labor a conveyance of the farm was made to her by Stange subject to the foregoing liens. At this stage of affairs it looked as though the liens would be paid and the numerous lawsuits disposed of, but other attorneys became interested in the litigation and the negotiations came to an end without anything being accomplished by way of compromise.

The prospect for peace having failed, Leo Lillie served the interested parties with notice to show cause before the court why the sale to him of the north 40 by the circuit court commissioner should not be confirmed. In response thereto much cause was shown and the chancellor was of the opinion that the sale should not be confirmed. As matters were becoming more complicated daily and the number of suits increasing, the chancellor suggested the present proceeding so that all parties would be before the court,

in which event their respective claims could be passed
upon and determined. After a review of the proceed-
ings herein referred to, and other suits and assign-
ments not herein mentioned, the chancellor reached
the conclusion that the best interests of all would be
better conserved by selling the farm as one parcel
for the purpose of satisfying the liens against it, and
that when sold the proceeds should be disposed of in
the following order:

1. The costs of the sale including the clerk and
sheriff's fees in this case.

2. To Charles E. Misner, assignee of the mortgage
to the Grand Haven State Bank, the amount of said
mortgage and interest thereon.

3. To Walter I. Lillie and Charles E. Misner, their
concurrent liens, *pro rata*, if necessary, and the in-
terest thereon. The lien of Walter I. Lillie being the
one awarded him in the case of Albina Roetter v.
Claus H. Stange, and the lien of Charles E. Misner
being the one awarded to him in the case of Claus
H. Stange v. Charles E. Misner.

4. To Walter I. Lillie, as assignee, the lien awarded
in the case of Marie DeRege Stange v. Claus H. Stange
and interest thereon.

5. The Lexow judgment and interest.

6. The surplus to be paid to Anna Wegner.

From this decree Walter I. Lillie and Anna Wegner
have appealed. The pleadings in this case as well
as the briefs in this court are filled with charges and
countercharges of bad faith, fraud, robbery and un-
professional conduct. Especially is this true of the
brief of counsel for Mrs. Wegner. We shall not
attempt to discuss these charges further than to say
that in our opinion they are not sustained by the
record. After draining off the bad blood which has
been engendered by this litigation from its inception,
the residuum presents the following questions:

1. Some claim is made that the appeal of Walter I.
Lillie was not taken in season and, therefore, is ir-

regular. The record shows that the "case made" by Mr. Lillie was settled by the trial court and his briefs are filed in this court. In view of the fact that no motion has been made by counsel in this court to dismiss the appeal, the irregularity, if one exists, must be regarded as having been waived by counsel.

2. Anna Wegner complains: (a) Because of the allowance of Walter I. Lillie's lien for professional services in the divorce case of Albina Stange v. Claus Stange. (b) Because of the allowance of the DeRege lien for alimony. (c) Because of the allowance of the Lexow judgment. These liens were owned by Walter I. Lillie and the judgment was represented by him as attorney. Without entering into a discussion of the charges made in connection with these matters we will content ourselves by saying we think the liens are valid. They were made in proceedings in which the court had jurisdiction and the right to declare them, and no party in interest has appealed therefrom. There is no claim that the Lexow judgment is not valid nor is there any claim that it has been paid. We are satisfied from the record that Mrs. Wegner knew of these several liens and also of the judgment, and that she agreed to assume and pay them as a part of the purchase price of the farm.

3. Mr. Lillie complains because Misner's claim for attorney fees was secured by a concurrent lien with his in the divorce case. Mr. Lillie appeared for plaintiff. She was successful and was granted alimony in the sum of $518.81. This sum included attorney fees and disbursements of Mr. Lillie amounting to $141.26. We are of the opinion that Mr. Misner's claim for $260, the amount he paid Mrs. Stange for an assignment of the decree, and the amount of Mr. Lillie's claim for services and disbursements should be made concurrent liens because both items are represented by the decree for alimony of $518.81. But we do not

think that Misner's attorney fees in that case should be secured by a concurrent lien with the amount granted as alimony, or with any of the items which made up that alimony, for the reason that should the farm sell for only enough to pay the mortgage indebtedness and the decree for alimony, the decree in this case, as it now stands, would have the effect of reducing the decree for alimony and compelling plaintiff in the divorce case to pay a portion of defendant's attorney fees.

The decree may be modified in this respect and affirmed. Defendant Lillie will recover his costs in this case, the same to be taxed against plaintiff Misner and defendant Wegner.

OSTRANDER, C. J., and STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred. MOORE, J., did not sit.